UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FUTURE NOW ENTERPRISES, INC. and
TIMOTHY CIMMER,

        Plaintiffs,                      Case Number 11-10530
                                                        Honorable David M. Lawson
v.

JOHN FOSTER, STEVEN SCHWEIHOFER,
GREAT LAKES AND RIVERS DEVELOPMENT,
LLC, BLUE WATER OIL CO., DON FOSTER, INC.,
DON FOSTER OIL CO., FOSTER ENERGY INC.,
FOSTER ENERGY SERVICES LLC, and FOSTER
BLUE WATER OIL LLC,

        Defendants.
_____/

## **OPINION AND ORDER GRANTING MOTION TO DISMISS**

The defendants have moved to dismiss the present action brought by the plaintiffs, who contend that they were cheated out of an ownership interest in a company that entered the newly-deregulated market to sell natural gas. The defendants argue that the plaintiffs' five-count complaint does not state any actionable claims, and the claims all are barred by the applicable statutes of limitation. The Court heard oral argument on the motion on June 27, 2011, and after due consideration concludes that the defendants' statute of limitations argument requires dismissal of the complaint as time barred. Therefore, the Court will grant the motion to dismiss.

I.

Plaintiffs Future Now Enterprises, Inc. (FNE) and its sole shareholder, Timothy Cimmer, allege that they embarked on a joint venture with defendants John Foster and Steven Schweihofer to enter the retail natural gas market. The plaintiffs allege that the parties agreed that the plaintiffs would receive a 33% ownership interest in the joint venture. The joint venture initially formed two

entities: Macomb County Energy, LLC (Macomb Energy) in Michigan and My Choice Energy, LLC (MCELO) in Ohio. Foster and Schweihofer caused MCELO to be dissolved and transferred Macomb Energy's Michigan retail gas certification to a newly formed Michigan LLC, My Choice Energy (MCEM). Despite promising to do so, Foster and Schweihofer never gave FNE or Cimmer a 33% ownership interest in MCEM. The plaintiffs filed suit, bringing claims for fraud, civil conspiracy, breach of contract, quantum meruit, and breach of fiduciary duty against John Foster, Steven Schweihofer, and a number of companies, corporations, and limited liability companies owned by Foster and Schweihofer.

According to the complaint, in 1999, Cimmer, a Canadian citizen who had developed expertise in retailing natural gas products, formed Future Now Enterprises, Inc., an operations and management company that provides a broad range of services relating to the retailing of natural gas products. In 2001, FNE established its U.S. presence by opening an office in Cleveland, Ohio.

In 2001, the Michigan Public Service Commission (MPSC) announced that it was establishing a natural gas retail sales program as part of the deregulation of the natural gas industry. Aware of the MPSC program, defendants John Foster and Steven Schweihofer (owners of the several corporate and limited liability company defendants), wanted to enter the retail natural gas market but lacked the knowledge and experience to do so. They did, however, have the financial ability to support a retail natural gas business.

Either in late 2001 or early 2002, a mutual acquaintance introduced Cimmer to Foster. The defendants sought to determine whether Cimmer had an interest in forming a joint venture with Foster and Schweihofer and to enter the natural gas retail market. In February 2002, Cimmer and Foster began discussing in earnest the creation of a joint venture between FNE and the defendants

in which plaintiff Cimmer and defendant Foster would be principals. Cimmer alleges that he made it clear that "the only basis of his interest in a business venture with the Defendants . . . was as an equity owner through FNE." Compl. ¶ 35. Cimmer says that Foster expressly acknowledged Cimmer's ownership objectives and agreed to them.

By the end of May 2002, Cimmer and Foster had agreed to form a business entity that would market natural gas in Michigan and later Ohio. The agreement, according to the plaintiffs, was that (1) FNE would receive a 33% interest in the new business and would provide services as consideration for its ownership interest, (2) Cimmer would serve as the chief executive of the new business, (3) Cimmer would receive compensation and reimbursement for services and expense, (4) Foster would provide financial backing, and (5) Foster would have 66% ownership in the company. The agreement was not reduced to writing at that time. But it was then that Schweihofer began his involvement with the joint venture, meeting with Cimmer and Foster to set up the initial entity. After being assured that FNE would be a 33% equity owner of the joint venture, Cimmer immediately began work in reliance on the agreement.

Macomb Energy was formed on June 27, 2002 by Schweihofer. Cimmer does not allege that he was named as a member or otherwise received any formal ownership interest in it. He did submit Macomb Energy's registration to the MPSC natural gas pilot program. Cimmer worked throughout the summer of 2002 on the project. In July 2002, Foster provided Cimmer with the financial documents necessary to establish credit with gas suppliers. Cimmer, on behalf of Macomb Energy, submitted one of those applications to Michigan Consolidated Gas Company. The submitted credit application contained information relating to the financial condition and credit of the defendants.

Macomb Energy was approved for "Authorized Supplier" status on August 9, 2002. By late summer or early fall, Macomb Energy had begun operations in Michigan.

Cimmer and Foster met on September 6, 2002 to refine the details of the venture. At that meeting, Foster sketched some notes that, according to the plaintiff, memorialized the agreement. However, the notes, attached to the complaint, are far from clear, and the plaintiff does not discuss the meaning of the notes in any detail. Neither party has submitted any other documentation discussing the terms of the agreement.

The plaintiff alleges that shortly thereafter, the parties then decided to enter the Ohio natural gas market under the same terms that the parties agreed upon on September 6, 2002. On October 7, 2002, Cimmer filed articles of organization in Ohio for My Choice Energy, LLC (MCELO). Cimmer, Foster, and Schweihofer were all listed as authorized representatives of the company, and Cimmer was designated as the agent. There is no representation of the ownership of the company, however. The articles of organization listed FNE's Ohio address as the address for MCELO. Cimmer later submitted a revised application to the Public Utilities Commission of Ohio that also listed Cimmer as CEO and one of the owners, but it also appears that Cimmer signed a document dissolving MCELO as of November 2, 2002.

Also on October 7, 2002, Cimmer filed MCELO's application with the Public Utilities Commission of Ohio for certification as a natural gas retailer. The plaintiffs maintain that the application lists Cimmer as one of the three owners of the company along with Foster and Schweihofer.

On November 20, 2002, Schweihofer told Cimmer that MCELO must be dissolved because he and Foster were restructuring their other companies, and MCELO, as it was then constituted,

would complicate their restructuring plan. The plaintiffs allege that Schweihofer told Cimmer that Schweihofer's and Foster's companies and FNE would be the owners under the new structure, rather than the individuals. According to the complaint, MCELO was dissolved on December 2, 2002.

On November 20, 2002, Schweihofer, on behalf of defendant Blue Water Oil Co. (BWO), filed articles of organization to form Great Lakes and Rivers Development, LLC (GLARD). On the same day, Schweihofer, unbeknownst to Cimmer, filed articles of organization for Foster Blue Water Oil Company LLC (FBW). FBW immediately entered into an operating agreement with its sole member, GLARD.

Schweihofer filed articles of organization in Michigan for My Choice Energy, LLC (MCEM) on November 20, 2002, also without Cimmer's knowledge. MCEM's sole member was FBW, whose sole member was GLARD, whose sole member was BWO. Cimmer was not listed as a member of MCEM. Schweihofer told Cimmer that once MCEM was up and running and the restructuring was complete, documents reflecting the plaintiffs' ownership interest would be prepared. Apparently, that never happened, however.

From May 2002 until he was fired in 2005, Cimmer says that he continued operating the businesses under the impression that he was an owner through FNE. The plaintiffs contend that Cimmer's work included preparing a foreign entity registration for MCEM, submitting a new application for Macomb Energy to comply with new licensing procedures, and running the daily operations of Macomb Energy and MCELO, including contract negotiation. During this time, Cimmer identified himself as the CEO/President of both Macomb Energy and MCELO with the consent of the defendants.

The plaintiffs allege that MCELO entered into a gas supply agreement with Cincinnati Gas and Electric on December 18, 2003, despite the fact that MCELO was dissolved over a year earlier. The plaintiffs say that the agreement between MCELO and Cincinnati Gas and Electric listed Cimmer as an "owner" in two places and was witnessed by Foster. However, the plaintiffs have not furnished a copy of the document.

In the summer of 2004, either Foster or Schweihofer filed an application with the Michigan Public Service Commission to transfer the retail gas certification from Macomb Energy to MCEM. The plaintiffs acknowledge that by August 2004, they discovered that neither Cimmer nor FNE had an interest in MCEM. They came upon that knowledge when they reviewed the application, which included a copy of the MCEM Operating Agreement. As a result, Cimmer requested a meeting with Foster to discuss creating documentation that would reflect his ownership interest in MCEM.

That month, Cimmer and his financial advisor met with Foster. At this meeting, Foster acknowledged that the September 2002 notes contained the terms of the agreement. The plaintiffs allege that Foster told Cimmer that he would have his attorneys draft the appropriate paperwork as soon as possible. Foster put him off. After waiting approximately four months, Cimmer became impatient and prepared a contract and presented it to Foster in December 2004. Foster informed Cimmer that he did not dispute the terms of the agreement, but he needed to have it reviewed by his attorneys. Neither party provided a copy of that draft agreement, nor have they described its terms in any detail.

At about the same time, Cimmer noticed that money due from Cincinnati Gas and Electric for sales in Ohio had not been paid to MCEM or MCELO. Cimmer renamed an existing FNE bank account and designated it as an account for My Choice Energy so that the funds from Cincinnati Gas

and Electric could be deposited into that account. The plaintiffs maintain that the change of account name was "to provide a depository for earnings from Ohio and to easily facilitate payment to vendors for Ohio services." Compl. ¶ 88. Cimmer took possession of funds generated by the Ohio operation and deposited them into the former FNE account. The plaintiffs allege that they did not make use of the funds.

Cimmer met with Foster again on January 26, 2005. At that meeting, Foster signed and dated the September 2002 hand written notes. Cimmer says that act provided him the reassurance he sought. However, less than a month later, on February 11, 2005, Cimmer was terminated and told by Foster that there was no agreement that gave Cimmer or FNE ownership in MCEM or MCELO. Foster subsequently accused Cimmer of embezzlement when he deposited funds payable to MCELO into the FNE account. A felony complaint charging Cimmer with embezzlement was issued on May 3, 2005, which apparently is still open. Cimmer alleges that the charges are false and that he had a right to collect and deposit the funds into the FNE account.

On February 10, 2011, the plaintiffs filed the present lawsuit against John Foster, Steven Schweihofer, and a number of corporations and limited liability companies owned or run by either Foster or Schweihofer, bringing claims for (1) fraud, (2) civil conspiracy, (3) breach of contract, (4) quantum meruit, and (5) breach of fiduciary duties. The plaintiffs acknowledge that it is unclear which entity defendants are properly named because Foster and Schweihofer often co-mingled their businesses when making representations to the plaintiffs and various state regulatory agencies, and that some of the defendant entities may be dismissed later.

The defendants responded to the complaint with a motion to dismiss attacking both the substance of the claims and the timeliness of the filing.

II.

The defendants' motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). That rule permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

"A motion to dismiss based on the expiration of the statute of limitations is analyzed under Rule 12(b)(6)." *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 501 (E.D. Va. 2002). "Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted 'when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.'" *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)); *see also Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir. 1945) (stating that "[t]he defense of the statute of limitations is covered by [Rule 12(b)](6), and therefore is properly raised by motion"). "What that means in the statute of limitations context is that dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

"Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003) (citing *Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487-88 (1980)). To avoid a statute of limitations bar, a plaintiff must commence his action within a prescribed time frame measured from the date the claim accrues. *See Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001). A statute of limitations claim therefore has three variables: the date the claim accrues; the date the action is commenced; and the permissible period of delay between those two events.

### A. Fraud

The defendants argue that the plaintiffs' cause of action for fraud must be dismissed because it is not based on statements separate and independent from a contractual promise. They also argue that the claim for fraud must be dismissed because the six-year statute of limitations for fraud has run. The plaintiffs respond that their fraud claim should not be dismissed because the misrepresentations were made by Foster in bad faith. They also contend that the claim did not accrue until February 2005 when Foster finally pulled the plug on Cimmer and accused him of embezzlement.

Under Michigan law, in order to succeed on a fraud claim, a plaintiff must show that (1) "the defendant made a material representation . . . (2) [that] was false"; (3) "when the defendant made the representation, [the defendant] knew that it was false, or . . . made [it] recklessly, without any knowledge of its truth, and as a positive assertion"; (4) "the defendant made the representation with the intention that it should be acted upon by the plaintiff"; (5) plaintiff acted in reliance upon it; and

(6) "[t]he plaintiff suffered injury due to his reliance on the representation." *Hord v. Envtl. Research Inst. of Mich.*, 463 Mich. 399, 404, 617 N.W.2d 543, 546 (2000).

When a contract governs the relationship between the parties, the plaintiff must allege a "violation of a legal duty separate and distinct from the contractual obligation" to support a fraud claim. *Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 84, 559 N.W.2d 647, 658 (1997) (citing *Hart v. Ludwig*, 347 Mich. 559, 563, 79 N.W.2d 895, 897 (1956)). In *Hart*, for example, the court held that the plaintiff could not bring a tort claim because the defendant had only violated a future promise to perform under a contract. *Hart*, 347 Mich. at 565, 79 N.W.2d at 898-89.

However, a "narrow exception to this rule recognizes that an actionable tort can be based upon a promise made without a present intention of performance, when the promise is given for the purpose of deceiving the promisee and influencing his conduct." *Connellan v. Himelhoch*, 506 F. Supp. 1290, 1296-97 (E.D. Mich. 1981) (citing *Ainscough v. O'Shaughnessey*, 346 Mich. 307, 314, 78 N.W.2d 209, 216 (1956); *Dixon v. Dixon*, 16 Mich. App. 42, 46, 167 N.W.2d 464, 477 (1969)); *see also Rutan v. Straehly*, 289 Mich. 341, 348-49, 286 N.W. 639, 642 (1939) (noting the exception to the general rule that "fraud cannot be predicated upon . . . failure to perform a promise or an agreement to do something at a future time" when the fraud claim is "is based upon a promise accompanied by a present intention not to perform it"). For a fraud claim to be viable based on a promise of future conduct, the party must have "at the time of the promise, a then-existing bad faith intent to break the promise." *Thompson v. Paasche*, 950 F.2d 306, 312 (6th Cir. 1991) (citing *Van Marter v. Am. Fidelity Life Ins. Co.*, 114 Mich. App. 171, 184, 318 N.W.2d 679, 684 (1982)).

The complaint contains allegations that support the theory that defendants Foster and Schweihofer induced Cimmer to invest his "sweat equity" in the joint venture without ever intending

-10-

to convey an ownership interest in the project. Bad faith plausibly can be inferred from such a scheme. The complaint states a viable claim of fraud despite the underlying contractual relationship among the parties.

The statute of limitations for fraud claims is six years under Michigan law. Mich. Comp. Laws § 600.5813. The period of limitations begins to run from the time the claim accrues. Mich Comp. Laws § 600.5827. A claim for fraud accrues when the fraudulent misrepresentation is made. *Ibid.* ("[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."); *Boyle v. General Motors Corp.*, 468 Mich. 226, 230-32, 661 N.W.2d 557, 559-60 (2003) (rejecting the proposition that a claim for fraud does not begin to accrue until the fraud is discovered or should have been discovered). When a defendant fraudulently conceals the existence of the misrepresentation, the plaintiff may bring an action "at any time within 2 years after [he] discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim." Mich. Comp. Laws § 600.5855.

According to the complaint, Foster's first misrepresentation occurred on June 27, 2002 when he and Cimmer agreed that Cimmer would hold a 33% ownership interest in the joint venture. The plaintiffs disavow any immediate knowledge of Foster's bad faith. However, the plaintiffs acknowledge that Cimmer learned in August 2004 that Foster and Schweihofer had formed companies to pursue the venture without recognizing an ownership interest in Cimmer or FNE. The plaintiffs cannot credibly claim that the defendants' actions were concealed much beyond that date. A generous reading of the complaint might justify an interpretation that Foster made new fraudulent misrepresentations at the meeting on January 26, 2005. But the complaint was not filed until February 10, 2011, which was 15 days after the six-year statute of limitations expired. The plaintiff

acknowledges that he certainly discovered the fraud when he was fired on February 11, 2005. However, the discovery rule gives him only "2 years after [he] discovers . . . the existence of the claim" to file his lawsuit. Mich. Comp. Laws § 600.5855; *see Crowder v. Roether*, No. 232509, 2002 WL 31929277, at *2 (Mich. Ct. App. Nov. 15, 2002) (stating that under section 5855, when a defendant actively conceals the existence of a cause of action, the "action may be commenced within two years after the plaintiff discovers or should have discovered the cause of action"); *Brownell v. Garber*, 199 Mich. App. 519, 523, 503 N.W.2d 81, 83 (1993) (stating that section 5855 provides that "fraudulent concealment of the existence of a cause of action makes the bringing of the action subject to the special two-year period of limitation"). Neither the six-year statute of limitations nor the two-year discovery rule can save the complaint in this case when it was filed 15 days after the cause of action accrued and more than four years after is was discovered.

The fraud claim was filed out of time and must be dismissed.

### B. Civil Conspiracy

The defendants next contend that the plaintiffs' claim for civil conspiracy should be dismissed because the plaintiffs did not prove a separate, actionable tort. The plaintiffs insist that their conspiracy claim is valid and timely, but they do not discuss it in detail.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313, 486 N.W.2d 351, 358 (1992). An actionable civil conspiracy claim fails as a matter of law unless the plaintiff establishes a separate, actionable tort. *Advocacy Org. for Patients & Providers v. Auto Club Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (2003) (quoting *Early Detection Ctr.,*

*PC v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (1986) ("However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort.")). A "conspiracy claim takes on the limitations period for the underlying wrong that was the object of the conspiracy. Further, it is the wrongful act, not the agreement to commit a wrongful act, that commences the running of the limitations period." *Terlecki v. Stewart*, 278 Mich. App. 644, 653, 754 N.W.2d 899, 906 (2008).

The "actionable tort" set out in the complaint is the intentional fraud stated in count 1. However, that claim cannot survive because it was filed late. The civil conspiracy claim must suffer the same fate.

C. Breach of contract

The defendants argue that the plaintiffs' claim for breach of contract should be dismissed because the statute of limitations has run. The claim is based on the May 2002 agreement and the meeting on September 6, 2002, where Cimmer and Foster refined the agreement. The defendants state the claim accrued in 2004 when Cimmer became aware that Foster and Schweihofer were creating a new ownership structure, Cimmer knew that neither he nor FNE were part of the ownership structure, and Foster refused to sign a document giving any ownership rights to the plaintiffs. The plaintiffs contend that the breach did not occur until February 11, 2005, the date Cimmer's employment was terminated.

The parties acknowledge that the statute of limitations for breach of contract claims is six years. Mich. Comp. Laws § 600.5807(8). A breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when the damage results." Mich. Comp. Laws § 600.5827. Put another way, the statute of limitations begins to run on the date the

contract is breached. *Am. Fed'n of State, Cnty. and Mun. Emps. v. Bd. of Educ. of the Sch. Dist. of the City of Highland Park*, 457 Mich. 74, 90, 577 N.W.2d 79, 85 (1998); *see also Dewey v. Tabor*, 226 Mich. App. 189, 193, 572 N.W.2d 715, 718 (1997) ("For contract actions, the period of limitation generally begins to run on the date of the breach of the contract. A plaintiff need not know of the invasion of a legal right in order for the claim to accrue." (citation omitted)).

In determining the date that the contract is breached, courts look to the terms of the agreement. *See Scherer v. Hellstrom*, 270 Mich. App. 458, 463, 716 N.W.2d 307, 310 (2006) (finding that the breach occurred the day the defendant sold her home because the agreement required payment to the plaintiff immediately upon the sale of the house). In cases where a party explicitly repudiates a contract, the breach occurs when the contract is repudiated. *Ritchie v. Williams*, 395 F.3d 283, 290 (6th Cir. 2005) (finding that claims were time barred because the plaintiff mailed a letter that stated that he would not be performing under the contract 10 years before the claim was brought). Where a contract requires the performance of continuous service, a claim is not barred until six years after the completion of the service. *Bay City v. Frazier*, 77 F.2d 570, 573 (6th Cir. 1935) (interpreting Michigan contract law); *Hanover Ins. Co. v. Eleven and One-half Mile Drainage Dist.*, 52 Mich. App. 658, 662, 218 N.W.2d 109, 111-12 (1974).

The contract alleged in this case was not one for continuous service. Foster and Schweihofer were to make Cimmer and FNE one-third owners of the joint venture at the outset. The breach, therefore, occurred on November 20, 2002 when Schweihofer filed articles of organization for MCEM that did not list FNE or Cimmer as members. Viewing the allegations in the complaint in the light most favorable to the plaintiff, Cimmer did not discover the breach until August 2004. The

claim accrued in November 2002, and the statute of limitations on the plaintiffs' breach of contract claim expired on November 20, 2008, unless it was tolled for some other reason.

The only tolling argument advanced here is fraudulent concealment. However, for the reasons discussed above, Michigan Compiled Laws § 600.5855 cannot save the breach of contract claim because the complaint was not filed within two years of the date the plaintiffs discovered the existence of the claim. Therefore, the breach of contract count must be dismissed as well.

### D.  Quantum meruit

The defendants contend that the quantum meruit claim should be dismissed because the May 2002 agreement covers the subject matter in dispute and a claim based on a quasi contract cannot proceed when an actual agreement is alleged. The plaintiffs respond that their claim is timely, but they have not offered any case law or analysis to support a claim for quantum meruit when breach of contract also is alleged.

Quantum meruit is an equitable remedy. "[I]n order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195, 729 N.W.2d 898, 904 (2006). "If this is established, the law will imply a contract in order to prevent unjust enrichment. However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003) (citation omitted).

An individual may not recover on a quantum meruit claim when an express contract covers the same subject matter. *Johnson Controls, Inc. v. Jay Indus., Inc.* 459 F.3d 717, 730 (6th Cir.

2006); *Belle Isle Grill Corp.*, 256 Mich. App. at 478, 666 N.W.2d at 280; *Cascade Elec. Co. v. Rice*, 70 Mich. App. 420, 426, 245 N.W.2d 774, 776-77 (1976). Where there is a dispute between the parties as to whether an express agreement exists, the plaintiff can proceed under an action for breach of contract and an action for unjust enrichment. *Cascade Elec. Co.*, 70 Mich. App. at 426, 245 N.W.2d at 777 (finding that the plaintiff could bring both actions because the plaintiff performed work that was not contemplated under the express contract and the defendant disputed the existence of an express verbal contract).

The plaintiffs contend that an express contract exists with the defendants. The defendants have not denied that allegation. And in any event, a party is not required to "elect to proceed under one theory or the other, but could seek recovery on the basis either of an express [ ] contract, or an implied contract if the [trier of fact] found that the express [ ] contract did not exist." *Id*. at 427*; see also H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 234 Mich. App. 550, 573, 595 N.W.2d 176, 188 (1999) (holding that a claim for unjust enrichment should not be dismissed because the court may find that the express contract was no longer in force); *cf. Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996) (holding that the plaintiff may proceed under a claim for breach of contract and unjust enrichment because the defendant "admitted the existence of a contract solely for the purposes of summary judgment").

But the plaintiffs have not alleged that they provided a benefit for which they were not compensated. The complaint alleges, "Defendants have been unjustly enriched and have retained the benefit of Cimmer's reliance upon Foster's promises and therefore such promises must be enforced to avoid injustice." Compl. ¶ 151. Cimmer does not allege that he worked without

compensation. He has not alleged any tangible benefit that he bestowed upon the defendants for which he was not paid.

Moreover, Michigan courts will not permit a quantum meruit claim to proceed when the contract becomes unenforceable solely because the statute of limitations has expired. *See Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, No. 260320, 2007 WL 1264008, at *8 n.8 (Mich. Ct. App. May 1, 2007) (stating that "[a]lthough the contract is unenforceable for the period on or before December 3, 1997, this is because of the statute of limitations, which we find equally applicable here to plaintiffs' unjust enrichment claim").

The plaintiffs may not pursue an equitable claim when their legal claim has expired. The quantum meruit claim, therefore, must be dismissed.

### E.  Breach of fiduciary duty

Finally, the defendants contend that the plaintiffs' claim for breach of fiduciary duties should be dismissed because it is barred by a three year limitation period.   The plaintiffs concede that point.

### III.

The Court finds that all of the claims accrued at least six years before the complaint was filed. Therefore, the claims are time-barred.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt. #3] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   March 19, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 19, 2012.

                                                s/Deborah R. Tofil
                                                DEBORAH R. TOFIL